(158 App. Div. 309.)

RICE, BARTON & FALES MACHINE & IRON CO. v. HOFFMAN–YOUMANS PAPER MILLS.

(Supreme Court, Appellate Division, Fourth Department. July 8, 1913.)

1. SALES (§ 359*)—PERFORMANCE OF CONTRACT—SUFFICIENCY OF EVIDENCE—WAIVER OF DELAY.

In an action upon a promissory note given for the purchase price of a machine manufactured to order, where the defendant filed a counterclaim for damages caused by the delay in the delivery of the machine, evidence *held* sufficient to show that the buyer had waived all claim for damages caused by the delay in consideration of an extension of credit granted by the seller.

[Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 511, 1056–1059; Dec. Dig. § 359.*]

2. SALES (§ 176*)—DELIVERY—WAIVER OF DELAY—CONSIDERATION.
   The extension of credit by the seller is ample consideration for a waiver
   and satisfaction by the buyer of all damages occasioned by delay in the
   delivery of a machine, whether the new agreement was made and per-
   formed before or after the breach of the contract of sale.
   [Ed. Note.—For other cases, see Sales, Cent. Dig. §§ 436–444; Dec. Dig.
   § 176.*]
   Foote, J., dissenting.

Appeal from Trial Term, Onondaga County.

Action by the Rice, Barton & Fales Machine & Iron Company
against the Hoffman-Youmans Paper Mills. Judgment for the plaintiff
on the referee's report, and defendant appeals. Referee's report mod-
ified, by inserting in lieu of the tenth finding thereof the following:
"This court finds from the evidence contained in the record that the
defendant waived the provisions of the contract requiring the plaintiff
to deliver the machine at the time therein mentioned, and any claim
for damages by reason of such failure to deliver the machine within
the time provided by the contract, or the time provided by the con-
tract." Judgment affirmed.

Argued before KRUSE, P. J., and ROBSON, FOOTE, LAM-
BERT, and MERRELL, JJ.

Steward F. Hancock, of Syracuse, for appellant.
William H. Harding, of Syracuse, for respondent.

LAMBERT, J. The action is upon a promissory note, as to the in-
ception of which there is no dispute; nor is it disputed but that same
has not been paid. The controversy arises with reference to a coun-
terclaim, sought to be interposed and maintained by the defendant.

February 16, 1910, plaintiff and defendant entered into a contract
whereby plaintiff agreed to sell to defendant a paper machine at the
stipulated price of $12,750, and to have same ready for shipment with-
in eight weeks. This contract provided for payment as follows:
One thousand dollars upon the signing of the contract, and the
balance by way of notes. The machinery was to be manufactured,
and it was not ready for shipment within the time provided for in
the contract, and in fact was not set up and in operation until No-
vember of that year. The counterclaim is for damages resulting from
plaintiff's breach of such contract as to time of delivery. Prior to the
agreed time of delivery it became apparent that the machine would
not be completed in time to comply with the contract in that particu-
lar, and plaintiff notified defendant of such fact. A lengthy corre-
spondence then followed between these parties, continuing until after
the delivery of the machine. The failure to comply with the agree-
ment at the contracted time seems to have resulted to some extent
from labor difficulties, and there is slight intimation of some misun-
derstanding with reference to certain drawings furnished by the de-
fendant. The letters from the defendant, following the notification
of plaintiff's inability to deliver on time, are ample to establish a
waiver of such time of delivery. Such letters are replete with re-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

quests to make delivery as soon as possible, and do not contain any intimation of a present or prospective claim of damages for the delay.

Following the delivery of the machine, the defendant executed and delivered to plaintiff the promissory notes in accordance with the terms of the original agreement. These notes were renewed from time to time for short intervals, until eventually plaintiff refused further renewals of the note in suit and commenced action thereon. Extensive correspondence was had between the parties relative to these renewals and the payment of this particular note, and such letters contained no intimation of a claim for damages for delay in delivery. It was only when this action was brought that this claim was first asserted by the defendant.

[1] The referee has disallowed such counterclaim, upon the theory that same was waived by defendant. Such conclusion seems well established by the evidence. In June, 1910, it appears that defendant was indebted to plaintiff upon other purchases than those involved in this contract, for the amount of which indebtedness plaintiff was asking payment. On June 15th, in response, apparently, to such a demand, defendant wrote the plaintiff as follows:

"In regard to the open account, we are always willing to accommodate and play fair; but on account of your delay in shipping our machine, which is now two months, we will have to ask that you wait a short time."

Also on June 11th defendant wrote plaintiff, in speaking of this open account, as follows:

"If you will kindly hurry along our shipment, we will be glad to reciprocate in the way of settlement."

From the above and similar letters found in this correspondence, it is to be observed that defendant was claiming an extension of credit upon this open account by reason of the delay in delivery of the machine contracted for. Evidently this exchange of courtesies was acquiesced in by the plaintiff, for on September 19th the plaintiff wrote the defendant as follows:

"We are very glad indeed to know that you will put the paper over the machine to-morrow. We trust that everything will be found satisfactory in every respect, and that we will receive a check from you, as you advised us that you would send one when the machine started making up paper."

From the above it will be noted that the parties mutually agreed to an extenson of the time of delivery because of the exigencies of the situation. This would not, however, necessarily defeat a claim for damages for the delay. The parties, however, further, by the asking and the granting of the extension of credit, adjusted all such claim for damages and fully satisfied same. Defendant made claim to a right of such extension of credit because of the delay in shipment. The plaintiff acquiesced in such claim and granted such extension.

[2] The extension of credit was a valuable concession, and affords ample consideration for the waiver and satisfaction of the damages occasioned through the delay in delivery. In effect, the parties made a new agreement, whereby the time for delivery was extended, and all claim for damages because of such delay extinguished. This new

agreement was founded upon a sufficient consideration and was fully performed. ·Such performance of the substituted agreement fully satisfies the original one. As was said in McCreery v. Day, 119 N. Y. page 9, 23 N. E. page 199, 64 L. R. A. 503, 16 Am. St. Rep. 793:

"The technical distinction between a satisfaction before or after breach seems to have been disregarded in this state, and a new agreement by parol, followed by actual performance of the substituted agreement, whether made and executed before or after breach, is treated as a good accord and satisfaction of the covenant."

For the foregoing reasons, the judgment appealed from should be affirmed, with costs. The last part of the tenth finding of fact contained in the referee's report, to the effect that, when the defendant so accepted the machine and gave the renewal notes, it waived the damages is modified by inserting in lieu thereof the following:

"This court finds from the evidence contained in the record that the defendant waived the provisions of the contract requiring the plaintiff to deliver the machine at the time therein mentioned, and any claim for damages by reason of such failure to deliver the machine within the time provided by the contract, or the time provided by the contract."

All concur, except

FOOTE, J. (dissenting). The action is upon a promissory note for $3,000, dated June 1, 1911, made by defendant to plaintiff in renewal of a prior note for the same amount, given to provide for the payment in part of the purchase price of a cylinder paper machine manufactured by plaintiff at Worcester, Mass., and delivered to defendant at its place of business at Baldwinsville, N. Y., at the agreed price of $12,750.

The controversy in the case arises over the delay in the delivery of this machine, which was several months later than the contract date of delivery. There is also a further question arising upon defendant's claim that it was entitled to renew the notes, including the one in suit, an indefinite number of times, because of the clause on that subject contained in the written contract, and for other reasons. This latter question was, we think, correctly ruled upon against the defendant by the referee, and no further reference to that question seems necessary.

As to the other question, it arises upon the counterclaim pleaded by defendant, to the effect that plaintiff agreed in the contract to deliver the machine to defendant within eight weeks, and it did not deliver the same for about four months, and that defendant was damaged by said delay in certain specified particulars to the amount of $4,000. It appeared from the correspondence between the parties that some weeks before the contract date of delivery, plaintiff ascertained that it would not be able to complete the machine and deliver it at the contract date, and so notified defendant; that defendant then and many times thereafter urged plaintiff to hasten the work of building the machine and to deliver it as early as possible, and called attention to the inconvenience and injury it would suffer by the delay. Nevertheless, defendant accepted the machine when it was finally delivered, and gave its promissory notes for the purchase price in accordance with the terms of the contract, without at that time making any claim

for damages. These notes were made at four months, five in number, and were renewed at defendant's request two or three times, and when the note now in suit became due, and plaintiff refused defendant's request for further renewal, and brought this action, defendant, for the first time, by its answer asserted to plaintiff a claim for damages on account of delay in delivery of the machine.

The referee has found as a fact that defendant, by accepting the machine when delivered without making a claim for damages, and by giving the renewal notes after the delivery of the machine, "thereby waived any damages which it may have sustained by reason of the failure of the plaintiff to deliver said machine at the time mentioned in said contract"; and, as conclusion of law, the referee has held that defendant, on the facts found, waived any claim for damages. The referee has also found, by ruling upon one of defendant's requests to find, that defendant's acceptance of the machine when delivered did not, in and of itself, constitute a waiver of defendant's claim for damages for the delay. There is no finding of an express agreement on defendant's part at any time to waive its claim for damages, nor is it claimed that plaintiff was led to complete the machine and deliver it after the contract date in reliance upon any statement of defendant that it would not make a claim for damages for the delay.

It having appeared from the evidence previously given that defendant had accepted the machine when delivered without making claim for damages, and had thereafter renewed the several promissory notes given for the purchase price as they matured without making such a claim, the referee excluded the evidence offered by the defendant to establish the amount of its damages under its counterclaim, on the ground that defendant's right to claim damages had been waived. As there was no finding of any express agreement of waiver, and no evidence from which such an agreement could be found, the question presented for our determination is: Did the defendant, by accepting the machine under the circumstances already stated thereby, as matter of law, waive its right to damages for the delay or estop itself from claiming and recovering such damages as counterclaim in this action?

No doubt the acceptance of the machine precludes defendant from interposing the delay as a defense in bar of an action for the purchase price. By accepting the machine, it becomes liable for the contract price; but I think the weight of authority favors the position of defendant that such acceptance does not waive the right to claim damages for the delay, either in an independent action, or by way of counterclaim in an action for the purchase price. The learned referee based his conclusion that there was a waiver upon the authority of the cases of Roby v. Reynolds, 65 Hun, 486, 20 N. Y. Supp. 386, and Burrowes Co. v. Rapid Safety Filter Co., 49 Misc. Rep. 539, 97 N. Y. Supp. 1048.

The latter case was an action for the contract price for window screens made by plaintiff and put into the building of defendant. The delay in performance beyond the contract time was pleaded as a defense, and not as a counterclaim, and the authorities are agreed that

acceptance under such circumstances is waiver of the delay and of nonperformance of the contract as a complete defense.

The Roby Case was an action to recover the contract price for five sets of double harness ordered by the defendant in that case of the plaintiff. Plaintiff was not a manufacturer of harnesses, and defendant understood plaintiff was to have the harnesses made by a manufacturer at another place. Defendant's claim was that the harnesses were to be delivered in one week. There was a delay in the delivery of about seven days after the week. After the harnesses had been received at plaintiff's place of business, defendant was notified of their arrival and called there to examine them; but as he was about to leave town by train, and had not sufficient time to make the examination, he made an arrangement with plaintiff's salesman by which plaintiff was to ship the harnesses to defendant at a place in Pennsylvania where he wished to use them, and plaintiff agreed to warrant the quality of the harnesses to be A No. 1 oak-tanned leather, and to take them back if they proved not to be so. Thereupon the harnesses were shipped to defendant, and after receiving them he sent his check to plaintiff in payment, deducting 3 per cent. from the purchase price as a discount for cash payment. This discount plaintiff refused to allow, and returned the check and sued for the purchase price. Defendant pleaded breach of warranty as to the quality of the goods, and a counterclaim for damages by reason of the delay in delivery of the goods. The jury seem to have allowed the counterclaim in the County Court, where the action was tried. On appeal this was held to be error, in that defendant, by what took place at the plaintiff's store, had waived the delay in delivery of the harnesses, and was not entitled to damages on that account. No authorities are cited in the opinion, but many of its expressions support the position of the plaintiff here.

To that extent we think the case is not in harmony with the cases referred to below, which we regard as controlling authority. Nevertheless this case is distinguishable on its facts from the present case. Plaintiff Roby did not himself undertake to manufacture these harnesses. When they were received at plaintiff's store, and defendant called there to examine them, some seven days after the contract date of delivery, the parties then made a new contract, or at least a modification of the original contract, by which, to induce defendant to accept the harnesses, plaintiff made an express warranty of the quality of the leather and agreed to take the harnesses back, if the leather proved not to be as warranted, and also agreed to make a delivery of the harnesses at a place in Pennsylvania where defendant wished to use them. In these material particulars the original contract was modified, and they afforded a good consideration for a waiver by defendant of the delay in delivery. In substance, a new agreement was then made by defendant to purchase those particular harnesses in the condition they then were in. As is said in the opinion of Dwight, P. J.:

"It is not to be supposed that plaintiff would have parted with the property if he had had reason to suppose that the defendant was to make a claim thereafter for nearly the entire price of the goods for previous delay in their delivery."

In addition to these cases, plaintiff's counsel has cited upon his brief a large number which he insists tend to support the decision of the referee. Many of them, I think, have no application to the question under consideration. Those which appear to support plaintiff's position are distinguishable as follows:

In Bock v. Healy, 8 Daly, 156, the delay in delivery was not pleaded as a counterclaim, but as a defense.

In General Elec. Co. v. National Contracting Co., 178 N. Y. 369, 70 N. E. 928, there was a considerable extension of the contract time for making and delivering the machinery there in question, and when it was finally delivered defendant refused to and never did accept the machinery, and the action was for damages for refusal to accept.

In Ohl & Co. v. Lewin Co. (Sup.) 132 N. Y. Supp. 385, defendant was in the attitude of refusing to accept the press which was the subject of that action, although it was held that the delay in delivering it had been waived.

In Crane v. Barron, 115 App. Div. 196, 100 N. Y. Supp. 937, defendants refused to accept the lumber they had contracted for, and the action was for damages because of such refusal.

In Dunn v. Steubing, 120 N. Y. 232, 24 N. E. 315, defendant's acceptance of plaintiff's work performed after the contract date was held to have waived the delay as a defense, and defendant's counterclaim for his damages on account of such delay was allowed.

In Birkett v. Nichols, 184 N. Y. 315, 77 N. E. 374, defendant had refused to accept the flour shipped in December, which by the contract was to have been shipped in November, and plaintiff recovered on the ground that the time for delivery had been extended before it expired, and that there was an executed waiver of the delay.

The rule, as we understand it, applicable to this question, is thus stated in Wharton on Contracts, vol. 2, § 891:

"Unless, also, punctuality goes to the substance of an engagement, a failure to keep time is waived by an acceptance of the goods or services; and if the promisee has sustained any loss by the delay as to time, he must prove it as a matter of set-off, or use it to sustain a cross-action, as the local practice may require."

In support of the doctrine of this learned author, it will be sufficient to cite the cases which have been called to our attention, without reviewing them in detail. They are: Granniss & Hurd Lumber Co. v. Deeves, 72 Hun, 171, 25 N. Y. Supp. 375, affirmed 147 N. Y. 718, 42 N. E. 723; Beyer v. Henry Huber Co., 115 App. Div. 342, 100 N. Y. Supp. 1029; Mikolajewski v. Pugell, 62 Misc. Rep. 449, 114 N. Y. Supp. 1084; General Supply & Construction Co. v. Goelet, 149 App. Div. 80, 133 N. Y. Supp. 978; Ruff v. Rinaldo, 55 N. Y. 664; Deeves & Son v. Manhattan Life Ins. Co., 195 N. Y. 324, 88 N. E. 395; Crocker-Wheeler Co. v. Varick R. Co., 104 App. Div. 570, 88 N. Y. Supp. 412, 94 N. Y. Supp. 23; Industrial Works v. Mitchell, 114 Mich. 29, 72 N. W. 25; Phillips & Colby Construction Co. v. Seymour, 91 U. S. 646, 23 L. Ed. 341; Johnson v. North Baltimore Bottle Glass Co., 74 Kan. 762, 88 Pac. 52, 7 L. R. A. (N. S.) 1114, 11

Ann. Cas. 505; Redlands Orange Growers Ass'n v. Gorman, 161 Mo. 203, 61 S. W. 820, 54 L. R. A. 718, and note, where the principal authorities are collected and reviewed.

I may add that the rule which seems to be established in these cases could not, with justice, have been otherwise. Where a party makes a contract with a manufacturer of machinery to build for him a special machine to install in his manufacturing plant, and he learns at or near the contract time of delivery that there is to be a failure of performance, in that the machine is not yet completed, it would be an unjust rule which would compel him to waive all claim for damages on account of delay as a penalty for accepting the machine when finally offered for delivery. Moreover, such a rule would, in many cases, work a more serious hardship to the delinquent manufacturer of the machine, for the purchaser could only retain his claim for damages by declining to accept the machine. Then, not only would it be thrown back upon the hands of the manufacturer to dispose of, but the purchaser's damages would be still further increased by the added delay incident to procuring another machine to be manufactured for him elsewhere. Whether this rule should be held to apply to the purchase and sale of goods already in existence, which are articles of commerce, we need not now consider.

Many of the cases cited are those arising out of building contracts where the owner was not in a position to decline to accept the building, although completed after the contract date, and it is urged that for this reason these cases should not be regarded as applicable to the present case. There is, of course, this difference: That in our case defendant might have refused to accept the machine after the delivery date had gone by, but it was not bound to do so. It was at its option whether it would accept the machine when offered at a later date and still claim its damages. Having elected to accept it, it was then in the same position as is the landowner, who accepts, because he cannot do otherwise, a building erected for him upon his land. The remedies of each against the delinquent contractor should, in principle, be the same.

I think the learned referee should have admitted the evidence offered by defendant to prove its damages for the delay in delivering the machine, and that he was in error in finding, from the facts proved, a waiver of its claim therefor by defendant.

The judgment appealed from should be reversed, and a new trial ordered before another referee, with costs to the appellant to abide the event.